UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CRIMINAL ACTION NO. 12-4-DLB-EBA

UNITED STATES OF AMERICA                                              PLAINTIFF

VS.                     **MEMORANDUM OPINION & ORDER**

THOMAS YONTS                                                          DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is currently before the Court upon Defendant's Motions to Suppress statements made by him and evidence seized by law enforcement officers following a search of Defendant's camper on April 18, 2011. (Docs. # 15 & 16). The government has filed responses to both motions. (Docs. # 17 & 18). An evidentiary hearing was conducted on November 2, 2012. Defendant was present for the hearing and was represented by Attorney David Mussetter. Plaintiff was represented by Assistant United States Attorney Laura Voorhees. At the conclusion of the hearing, the motions were submitted for decision. For the reasons set forth herein, Defendant's motions to suppress are hereby **denied**.

I.   **Issues raised**

In his motions, Defendant seeks to suppress all statements he made after he was arrested because, according to him, he was not advised of his *Miranda* warnings prior to giving those statements. Accordingly, he argues any statements given by him were not voluntary and should be suppressed. *See* Doc. # 15. In his motion to suppress evidence, he argues that the search of his camper and subsequent seizure of the firearms and other

1

incriminating evidence was unreasonable in violation of his rights secured by the Fourth Amendment to the U.S. Constitution because they were conducted without a warrant. He also argues that he did not validly consent to the search. *See* Doc. # 16.

## II. Findings of Fact

During the November 2, 2012 evidentiary hearing, three witnesses testified. The United States called Detective David Zimmerman and Sergeant Rob Conn, both troopers with the Kentucky State Police (KSP). Defendant testified on his own behalf. Weighing the credibility of the witnesses, which leads the Court to conclude the officers' version of the events was more believable, and considering the exhibits admitted during the hearing, the Court makes the following factual findings:

1. Sometime prior to April 18, 2011, Lewis County, Kentucky Sheriff Johnny Bivens was involved in an unrelated criminal encounter with Yonts. During this encounter, Bivens pursued Yonts but was unable to apprehend him. Yonts had been on the run for approximately three years at that time, a point he acknowledged during the hearing.

2. On April 18, 2011, Bivens contacted Sgt. Conn and advised him that Yonts had three arrest warrants pending against him in Lechter County, Kentucky, and that Conn might find him staying at a camper[1] near the Lower Licking Road area of Rowan County. Upon learning of the arrest warrants, Sgt. Conn, Det. Zimmerman, and several other KSP troopers responded to the Lower Licking Road location in Rowan County. After some initial difficulties in determining the correct location, the officers eventually proceeded to a

---

[1] Yonts maintained both a RV and a modular home on the Lower Licking Road property. This order will refer to Yonts' mobile RV as the "camper," and to his immobile modular home as the "trailer" (also sometimes referred to as the "residence" at the suppression hearing).

residence at 2705 Green Bend Road in Morehead, Kentucky.

3. Upon arriving in the driveway of that address, Det. Zimmerman saw an individual inside the residence. The officers surrounded the residence and Det. Zimmerman saw an individual later identified as Yonts fleeing up a hill behind the residence. Based on his past criminal history, the officers believed Yonts to be armed and dangerous. As a result, the officers pursued him with their weapons drawn, telling him that they had warrants for his arrest, and advising him to stop or they would shoot.

4. After a short chase, but prior to the officers catching him, Yonts stopped running and acquiesced to the officers' commands, sitting down on a log near the tree line. Yonts then permitted Det. Zimmerman to arrest and handcuff him. After Yonts was handcuffed, the officers immediately holstered their weapons.

5. According to Det. Zimmerman, Yonts was not under the influence of drugs or alcohol at the time he was apprehended.[2] Yonts was then advised of the Lechter County warrants, and he acknowledged that he was aware of them. No questioning occurred at this time.

6. Because of the officers' concerns that Yonts might be armed, Det. Zimmerman conducted a pat down search of his person. During that pat down, Det. Zimmerman located a set of keys and marijuana in his pants pocket.

---

[2] At the suppression hearing, defense counsel asked Det. Zimmerman why there was a reference to suspected drug use in his report. Zimmerman explained that because he had located marijuana and Klonopin on Yonts's person and inside his camper, he suspected potential drug use. However, he emphasized that he did not notice any physical or behavioral signs indicating that Yonts was under the influence of drugs. Det. Zimmerman's explanation was entirely reasonable.

7. After being patted down, Yonts was escorted in handcuffs back down the hill to the area near the driveway of the house.[3]

8. While Yonts was still in handcuffs, and before Yonts made any incriminating statements, he advised Yonts of his *Miranda* rights.[4] After Sgt. Conn advised Yonts of his *Miranda* warnings, Yonts responded that he understood his rights. Yonts agreed to speak to the officers, and at no time did he request an attorney.

9. During their entire conversation with him, which took less than ten minutes, the officers maintained a calm and conversational tone and never threatened him in any way. Yonts was also permitted to smoke a cigarette during the interrogation.

10. During the brief interrogation, Sgt. Conn conducted a pat-down on Yonts[5] and

---

[3] Defendant alleges that before the officers brought him back down the hill, KSP Trooper Eugene Robinson said "this is for my buddy in Lewis County," and struck him on the small of his neck four times. According to Yonts, the officers then led him back down the hill where they encountered Yonts' dog and threatened to "blow its brains out." Yonts also claimed that the officers threw his wife out of the trailer "like a one-armed airplane," put a knee in her back, handcuffed her and pointed a rifle at her. He further testified that they forced him onto his knees while they entered his camper without consent, ransacked it, and seized the firearms. Both Sgt. Conn and Det. Zimmerman categorically denied that any of these events occurred. The Court specifically credits the troopers' version of events. Although it would not be uncommon for officers concerned about their safety to secure the residence after apprehending Yonts, which would include placing his wife in handcuffs until they could verify her identity, his story that the troopers went "flipping" through his camper looking for guns without consent is simply not credible.

[4] Although Yonts contends no *Miranda* warnings were given, Det. Zimmerman partially corroborated Sgt. Conn's testimony. Det. Zimmerman testified that he approached just as Sgt. Conn was finishing reading Yonts his *Miranda* rights, and heard Sgt. Conn ask Yonts "if he understood his rights." Det. Zimmerman then heard Yonts say he understood. While defense counsel points out that there is no reference in the police report to *Miranda* rights being administered, the Court finds the testimony of Sgt. Conn and Det. Zimmerman to be consistent and credible. Because Yonts was so cooperative, Det. Zimmerman did not mention the *Miranda* warnings in his report. That explanation was reasonable.

[5] Det. Zimmerman testified that this second pat-down was undertaken because Sgt. Conn had not been present on the hill when the first pat-down was conducted and thus was unaware it had occurred.

located an ammunition round in his pocket.[6] Conn then asked Yonts "where the guns were." Yonts responded that they were in the camper.

11. Sgt. Conn then asked Yonts for consent to search the camper. Both Sgt. Conn and Det. Zimmerman testified that Yonts granted consent to search. During their conversation with Yonts, no threats or promises were made, nor did the officers exercise any subtle forms of coercion to inhibit Yonts' judgment. At no time did Yonts attempt to withdraw his consent.

12. After Yonts consented to the search, he identified a key in his pocket that opened a padlock on the side of the camper. Yonts also described to the officers where they could find the firearms inside the camper. Yonts was cooperative throughout the officers' search, and never withdrew his consent. Yonts even appeared relieved that he had been caught, stating something to the effect that he was tired of running from law enforcement, and even admitting that he had been on the run for approximately three (3) years when he was caught.

13. In addition to finding the three firearms mentioned in the indictment, the officers also located ammunition, Klonopin, and drug paraphernalia. Yonts told the officers the firearms belonged to him.

### III. Analysis

The Court must decide two issues in resolving Defendant's motions to suppress. First, whether the Defendant's statements were voluntary. That inquiry will focus first on

---

[6] Although Yonts denies having the round of ammunition in his pocket, the Court rejects that testimony as not credible. The troopers' version is more believable because it was the discovery of the ammunition which triggered the questioning about the firearm.

whether Defendant was properly advised of his *Miranda* warnings and if so, whether he validly waived those rights and agreed to answer the officers' questions. Second, whether Defendant consented to a search of the camper. Each issue will be addressed in turn.

> **A. Defendant was properly advised of his *Miranda* warnings and knowingly waived those rights, thus making the statements admissible**.

It is well-established that "incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised of his ... *Miranda* rights." *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (*citing Stansbury v. California*, 511 U.S. 318, 322 (1994)). After a suspect has been advised of those rights, he may waive them, provided that waiver is "voluntary, knowing and intelligent, under the totality of circumstances." *United States v. Walls*, 116 F. App'x 713, 717 (6th Cir. 2004).

The government bears the burden of proving a valid waiver by a preponderance of the evidence. *United States v. Jones*, 205 F. App'x 327, 334 (6th Cir. 2006); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

To be valid, a *Miranda* waiver must be both knowing and voluntary. *Id.* In other words, the waiver must be both "the product of a free and deliberate choice rather than intimidation, coercion, or deception" and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* However, there is no requirement that a defendant's waiver of *Miranda* rights must be in writing. *United States v. Stevens*, 445 F.2d 304, 305 (6th Cir. 1971).

Once a "suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him." *Davis v. United States*, 512 U.S. 452, 458 (1994). If, after that point, the suspect requests counsel, the officers must cease questioning "until a lawyer has been made available or the suspect himself reinitiates conversation." *Id.* However, a "suspect must unambiguously request counsel" to trigger the cessation of questioning. *Id.* at 459. In other words, "he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.*

Here, although there was no written waiver of Yonts' *Miranda* rights, the testimony established that Yonts was orally advised of his *Miranda* rights by Sgt. Conn, advised Sgt. Conn that he understood his rights, and agreed to speak Sgt. Conn. Yonts also expressed that he was glad to finally not have to hide any longer. His relief was evident in his actions during the brief interrogation when he not only told the officers where they could find the firearms, but offered that one of his keys unlocked the camper where they would be found. Yonts was cooperative throughout his brief encounter with the police, and he knowingly and voluntarily waived his *Miranda* rights. He also never invoked his right to counsel after agreeing to speak to the officers.

In addition, Yonts' version of events lacks credibility. Moreover, it lacks any corroborating evidence, such as testimony from Yonts' wife, proof of visible injuries to Yonts, or a request from Yonts for medical attention following the attack. It is also lacks expected detail, such as whether Robinson struck Yonts with an open hand, a fist, or a weapon of some sort—details that obviously bear on the nature and severity the injuries Yonts would have likely sustained had he been violently assaulted by Robinson as he

7

described. Furthermore, according to Yonts, the officers entered his camper without a key; by contrast, both Det. Zimmerman and Sgt. Conn testified that they could not enter the camper until they unlocked a padlock using a key found in Yonts' pocket. This is an irreconcilable difference that casts significant doubt on the veracity of Yonts' testimony.

Upon considering the totality of the circumstances, the Court concludes that the United States has established by a preponderance of the evidence that Yonts' waiver of *Miranda* rights was voluntarily, informed, and intelligent. As a result, Defendant's motion to suppress statements (Doc. # 15) is **denied**, and all statements made by him will be admissible during the upcoming trial.

### B. Defendant freely and voluntarily consented to a search of his camper.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures....'" *United States v. McClain*, 444 F.3d 556, 561 (6th Cir. 2006) (quoting U.S. CONST. amend. IV). "The reasonableness requirement generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home." *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003). A search conducted without a warrant issued upon probable cause is "per se unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

Perhaps the most well-delineated exception is a search conducted pursuant to an individual's consent. *Id.* at 358 & n.22. If the government "seeks to rely upon consent to justify the lawfulness of a search, as it does here, [it] has the burden of proving that the

consent was, in fact, freely and voluntarily given." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). The government can meet this burden only by providing "clear and positive testimony" demonstrating voluntary consent by a preponderance of the evidence. *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009).

"[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227. In making its determination, the court must consider all subtly coercive police behavior and any possible vulnerable state of the person granting consent. *Id.* at 229. The court should also "examine the characteristics of the accused, including the age, intelligence, and education of the individual." *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998) (citing *United States v. Jones*, 846 F.2d 358, 360 (6th Cir. 1988)).

In this case, although the officers searched Yonts' camper without a warrant, their search did not violate his Fourth Amendment rights because he gave free and voluntary consent. At the time of his arrest, Yonts was 36 years old and was not under the influence of alcohol or drugs. Yonts' ability to comprehend was confirmed when he indicated that he was aware of the Letcher County warrants, and freely told the officers where they could find the firearms, including providing them with a key to the camper. Although Yonts was not highly educated, he did have extensive experience with law enforcement and the criminal justice system prior to April 18, 2011. That criminal history included numerous felony convictions from Letcher County Circuit Court for drugs, wanton endangerment, fleeing and evading police, assault, and burglary. Put simply, Yonts is no stranger to the criminal

justice system.  Also significant in the Court's view is the testimony by Det. Zimmerman who explained that Yonts seemed relieved that he had finally been caught and would no longer have to be on the run.  That statement is indicative of someone who wants to cooperate and more importantly, is not something an individual whose will is overborne would say.

For their part, throughout their encounter with Yonts, the arresting officers maintained a calm and colloquial tone during their questioning of him and did not threaten him in any way.  Nor is there any evidence that the officers coerced Yonts into consenting to the search.  To the contrary, Yonts was asked for consent to search one time and freely and voluntarily gave it, and at no time did he attempt to withdraw his consent.

For all of these reasons, the Court concludes that the United States has proven, by a preponderance of the evidence, that Yonts freely and voluntarily consented to the officers' search of the camper.  His motion to suppress evidence (Doc. # 16) is **denied**, and all evidence seized pursuant to his consent search will be admissible during trial.

## IV.     Conclusion

Accordingly, **IT IS ORDERED** that Defendant's motions to suppress statements made by him (Doc. # 15) and evidence seized by law enforcement officers following a search of Defendant's camper/trailer on April 18, 2011 (Doc. # 16) be, and are hereby **denied**.  The time period between October 12, 2012 and the date of this Order, totaling 25 days, is excluded from the provisions of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D).

The trial of this case will begin as scheduled on **Tuesday, November 13, 2012 at 1:00 p.m. in Ashland**, with counsel present at 12:30 p.m.

This 6th day of November, 2012.



G:\DATA\ORDERS\Ashland Criminal\2012\12-4 MOO denying mtns to suppress-2.wpd